DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant, Darryl Durr, appeals from the decision of the Lorain County Court of Common Pleas, Juvenile Division, denying him visitation and determining custody of his daughter. We affirm.
 I.
On January 1, 1996, Lorain County Children Services ("LCCS") filed a complaint requesting temporary custody of Angel Durr ("Angel"), Mr. Durr's daughter. In a magistrate's decision journalized on March 1, 1996, Angel was found to be a neglected child and LCCS was given temporary custody of her. On April 8, 1996, the trial court, adopting the magistrate's decision, ordered that LCCS was to have temporary custody of Angel.
Mr. Durr had, however, not been informed of these proceedings. In fact, Mr. Durr had been in prison awaiting execution for the kidnapping, rape, robbery, and murder of Angel Vincent, who was Angel's mother's friend. State v. Durr (1991),58 Ohio St.3d 86. On February 4, 1998, Mr. Durr, having learned of the proceedings, filed pro se, among other things, a motion for appointment of counsel and motion for extension of time. An attorney was appointed to represent Mr. Durr and an extension of time was granted to allow Mr. Durr to consult with his attorney. On June 15, 1998, after a hearing, Angel was adjudged to be a neglected child and ordered to remain with LCCS until a disposition hearing could be held with Mr. Durr present.
After a hearing at which Mr. Durr testified was conducted, the magistrate issued a decision, on August 17, 1998, granting Lisa and Shannon Washington, Angel's maternal aunt and her husband, legal custody of Angel and ordering Mr. Durr to attempt no further contact with Angel. On August 28, 1998, Mr. Durr filed objections to the magistrate's decision. The trial court's decision of October 23, 1998 adopted the magistrate's decision and overruled Mr. Durr's objections to the magistrate's decision. This appeal followed.
 II.
Mr. Durr asserts four assignments of error.[1] We will address each in turn.
 A.
First Assignment of Error
 The trial court's decision to restrain Appellant from contacting his daughter was against the manifest weight of the evidence.
Mr. Durr argues that the trial court acted against the manifest weight of the evidence when it denied his request for custody, his request to have some undetermined member of his family be given custody, and his request to correspond with and converse by telephone with Angel. We disagree.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3.
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. Furthermore, "[i]t is axiomatic that this court does not sit as a trier of fact. Rather, `on the trial of a case, either civil or criminal, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of facts.'" Kuempel Serv., Inc. v. Zofko (1996), 109 Ohio App.3d 591,598, quoting State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Parental rights and responsibilities are to be allocated based upon the "best interest of the child." Braatz v. Braatz
(1999), 85 Ohio St.3d 40, 43, citing R.C. 3109.04. However, "[m]odification of visitation rights is governed by R.C.3109.051." Id. at paragraph one of the syllabus. "When determining whether to grant companionship or visitation rights to a parent * * * [the court] shall consider all * * * relevant factors[.]" R.C. 3109.051(C). These factors include, but are not limited to: (1) "[t]he prior interaction and interrelationships of the child with the child's parents"; (2) "[t]he geographical location of the residence of each parent and the distances between those residences"; (3) "the wishes and concerns of the child, as expressed to the court;" (4) "[t]he health and safety of the child;" and (5) "[a]ny other factor in the best interest of the child." R.C. 3109.051(D). A court, in determining what visitation schedule is appropriate, if any, must consider the factors set forth in R.C. 3109.051(D) as well as the best interest of the child. Braatz, 85 Ohio St.3d at 45.
If the child was born out of wedlock, the mother and father are to be viewed "as standing upon an equality when making the [custody] determination." R.C. 3109.042. The trial court's "discretion is not unlimited, however, but must be exercised in a manner which best protects the interests of the child." Bodine v.Bodine (1988), 38 Ohio App.3d 173, 175.
After a child has been adjudged neglected or dependent, "the court may make an order restraining or otherwise controlling the conduct of any parent[.]" R.C. 2151.359. Such an order is appropriate where the "conduct or relationship * * * will be detrimental or harmful to the child." Id.
The trial court did not act against the manifest weight of the evidence when it determined that Mr. Durr should be given no visitation rights with regard to Angel and would be subject to an order restraining him from contacting her. Mr. Durr has not attempted to send Angel any financial support, although he states that he does earn some money by doing work in prison. Mr. Durr has had no contact with Angel for almost ten years. Moreover, he did not move for visitation, or contact with Angel by telephone or mail until he learned that her mother had abandoned her. Although he asserts that his family wishes to have custody of Angel, no one in his family testified that they wished to have custody, or indeed that they are even in a position to attempt to take custody.
Angel does not wish, at this time, to visit with or speak with her father. The trial court conducted an in camera interview with Angel on August 12, 1998, where she explained her current position. Moreover, visitation would, by necessity, occur in prison. We conclude, considering the record before us and having thoroughly reviewed it, that the trial court did not act against the manifest weight of the evidence by determining that Mr. Durr is to refrain from contacting Angel and is not entitled to custody or visitation. Further, we adduce that the decision of the trial court, that such contact was not in Angel's best interest and will be detrimental to her, is not against the manifest weight of the evidence. Mr. Durr's first assignment of error is overruled.
 B.
Second Assignment of Error
 The trial court placed the burden of proving visitation was [sic] in the best interest of the child on the father in violation of his right to due process of law.
Mr. Durr argues that the burden of proof was improperly allocated by the trial court in determining the visitation rights of a parent. He asserts that the party seeking to deprive a parent of visitation has the burden of proof, while the trial court improperly determined that Mr. Durr, as he is currently incarcerated, has the burden of rebutting the presumption that visitation is not in the child's best interest. He asserts that the trial court's allocation of the burden of proof violated his right to due process of law. We disagree.
"A noncustodial parent's right of visitation with his children is a natural right. As such, the right of visitation, albeit not absolute, should be denied only under extraordinary circumstances." (Citations omitted.) Pettry v. Pettry (1984),20 Ohio App.3d 350, 352. Although
 imprisonment for a term of years of a natural parent is an extraordinary circumstance, it does not necessarily follow that no visitation can be awarded. Once the extraordinary circumstance is established, visitation necessarily must depend upon the best interest of the child. The burden of demonstrating that it would be beneficial and in the best interest of the child for visitation to continue falls upon the natural parent who is incarcerated for a term of years for committing a crime of violence.
In re Hall (1989), 65 Ohio App.3d 88, 90. See In re Erica (C.P. 1994), 65 Ohio Misc.2d 17, 22. Furthermore,
 [w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the Due Process Clause. * * * But the mere existence of a biological link does not merit equivalent constitutional protection.
(Citation omitted; second and third alteration sic.) Lehr v.Robertson (1983), 463 U.S. 248, 261, 77 L.Ed.2d 614, 626, quotingCaban v. Mohammed (1979), 441 U.S. 380, 392, 60 L.Ed.2d 297, 307.
The trial court applied the correct burden of proof in the instant action. Mr. Durr was found guilty of and is currently incarcerated for the murder of Angel's mother's friend. If his appellate arguments are unsuccessful, he will be executed by the State of Ohio. It has been noted that "[i]t would be cruel to subject [a child] to the trauma and disruption of briefly seeing her father under the confined circumstances that the proposed visitation entails, only to be taken away from him again." In reErica, 65 Ohio Misc.2d at 22. Moreover, although a prison visitation area is generally not conducive to familial discourse, death row visitations are even more closely monitored and disconcerting. Mr. Durr would not be allowed physical contact with Angel; rather, they would be separated by protective glass and could not so much as play a game or hold hands. We conclude that such an environment must be considered an extraordinary circumstance and sufficient to shift the burden of proof to the natural parent seeking visitation.
Mr. Durr, while present at his daughter's birth, has not seriously attempted to have a relationship with her during his incarceration until now. Until 1996, Angel's mother had custody of her and Mr. Durr did nothing more than write several letters to his daughter, which were either not responded to or returned unopened. It was not until Mr. Durr learned that Angel's mother had abandoned her that he instituted legal proceedings aimed at gaining a relationship with Angel. "`Parental rights do not spring full-blown from the biological connection between parent and child. They require relationships more enduring.'" (Emphasis omitted.) Lehr, 463 U.S. at 260, 77 L.Ed.2d at 626, quotingCaban, 441 U.S. at 397, 60 L.Ed.2d at 310. Hence, we conclude that Mr. Durr's due process rights were adequately protected by the hearing, which he was present during and testified at, and that the burden of proof utilized by the trial court did not violate his due process rights.[2] Mr. Durr's second assignment of error is overruled.
 C.
Third Assignment of Error
The adjudication of the child as neglected was not proper andshould be vacated.
Mr. Durr argues that the trial court erred procedurally in determining that Angel was a neglected child, as Mr. Durr was unable to personally attend the proceeding and the trial court did not consider Mr. Durr's family for permanent placement. Further, he asserts that the failure by LCCS to notify him of the first hearing, which determined that Angel was a neglected child, was a violation of his due process rights. We disagree.
Mr. Durr asserts that the trial court erred in refusing his request to be transported from prison to attend the hearing at which Angel was found to be neglected. There is, however, no such absolute requirement in the law. State ex rel. Vanderlaan v.Pollex (1994), 96 Ohio App.3d 235, 236-37.
Further, Mr. Durr argues that the trial court did not take into account his wife's ability to care for Angel. Mr. Durr did not, however, adduce any evidence as to his wife's ability or desire to care for Angel, or the ability or desire of other members of his family to care for Angel. Although we do not question the sincerity of Mr. Durr, no member of his family testified that they wish to obtain custody of Angel. Hence, we conclude that the trial court did not err by failing to grant custody of Angel to one of Mr. Durr's family members.
Finally, Mr. Durr asserts that the first hearing, which took place in 1996 and concluded with the determination that Angel was neglected, violated his due process rights. The matter was, however, re-adjudicated and Mr. Durr was represented at the re-adjudication. It is the determination upon re-adjudication, which is currently before us on appeal. Mr. Durr does not state what relief he seeks other than to be given custody of Angel. We decline to do so, as the second hearing, at which Mr. Durr was represented, adjudicated the custody issue. Moreover, Mr. Durr does not assert that the second adjudication violated his due process rights due to lack of notice. We decline to fashion a counterpart to the exclusionary rule in criminal law in the civil custody context. Mr. Durr's third assignment of error is overruled.
 D.
Fourth Assignment of Error
 Appellant was denied effective assistance of counsel in violation of his Sixth Amendment Right.
Mr. Durr argues that his counsel before the trial court was ineffective. He asserts that his counsel should have argued, at the custody hearing, that, in the alternative of placing the burden of proof on the state rather than Mr. Durr, an expert should be appointed to aid Mr. Durr by assessing the ramifications of visitation in the prison setting in regard to child development and psychology. Moreover, Mr. Durr argues that his counsel failed to argue that such an expert should be appointed at state expense and that his attorney, in failing to make such an argument, was ineffective. We disagree.
"The two-part standard set forth in Strickland v. Washington
(1984), 466 U.S. 668, 687, * * * 80 L.Ed.2d 674, 693, for proving ineffective assistance of counsel in criminal cases is also used in cases where the state attempts to gain involuntary and permanent termination of parental rights." In re Wise (1994),96 Ohio App.3d 619, 627. Where the parent seeking visitation and contact with their child is on death row, awaiting execution by the state, and, absent reversal on appeal, his only meaningful opportunity to have contact with his child is at stake, the same standard will be applied. To determine if the parent's counsel was inadequate:
 "First, the [parent] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the [parent] by the Sixth Amendment. Second, the [parent] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [parent] of a fair trial, a trial whose result is reliable."
Id. at 628, quoting Strickland, 466 U.S. at 687,80 L.Ed.2d at 693. To demonstrate prejudice, "an appellant must prove that `there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.'" In re Wise, 96 Ohio App.3d at 628, quoting State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus.
Mr. Durr's counsel was not ineffective due to his arguments at the custody hearing. There is no evidence proffered as to what testimony an expert in child psychology and development would have given. Although Mr. Durr implies that such an expert could have been helpful to his cause, "there is again no evidence presented as to whether such [an expert was] available or what pertinent facts might have been garnered by such action." In re Wise,96 Ohio App. 3d at 628. Moreover, "[a]lthough there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has — and must have — full authority to manage the conduct of trial. The adversary process could not function effectively if every tactical decision required client approval." (Footnote omitted.) Taylorv. Illinois (1988), 484 U.S. 400, 417-18, 98 L.Ed.2d 798, 816. Tactical decisions, such as what arguments to put forward, are generally the province of the attorney. In the instant case, we deduce that Mr. Durr's attorney simply made a tactical choice, arguing and focusing the trial court's attention on a single issue rather than arguing two inconsistent positions in the alternative. We conclude that such a tactical choice does not amount to deficient performance by an attorney to the extent that he or she is no longer the counsel envisaged in the Sixth Amendment and, hence, cannot serve as the basis for an ineffective assistance of counsel claim. Mr. Durr's fourth assignment of error is overruled.
 III.
Mr. Durr's four assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Domestic Relations Division, is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
WILLIAM G. BATCHELDER FOR THE COURT CARR, P.J.
WHITMORE, J.
CONCUR
[1] Mr. Durr mailed a pro se brief to this court but failed to serve any of the other parties or request leave to file such a brief. Hence, we decline to address the assignments of error therein. App.R. 13(D).
[2] Mr. Durr asserted both at the hearing before the trial court and in his brief to this court that he had never been vested with parental rights with regard to Angel Durr. We do not pass on this issue with regard to those who are vested with parental rights.